## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JESSIE DUANE QUEEN,

        Petitioner,

vs.                      Case No. 3:19-cv-1477-HLA-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

        Respondent.

_____/

## **ORDER**

### I.   **Status**

Petitioner, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. (Doc. 1, Petition.) He is serving two consecutive terms of 15 years in prison for the sale of a controlled substance (cocaine) and the possession of a controlled substance with intent to sell or deliver. Petitioner challenges his convictions and sentence based on the ineffective assistance of counsel. Respondents oppose the Petition, arguing that the first four grounds do not merit relief under AEDPA's[1]

---

[1] The Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 (1996).

deferential standard of review and that Grounds Five and Six are unexhausted and procedurally defaulted. (Doc. 7, Answer.) Petitioner replied. (Doc. 12, Reply.) Thus, the matter is ripe for a decision.

## II.    <u>Background</u>

In May 2011, a multijurisdictional task force in Columbia County, Florida, used a paid confidential informant ("C.I.") to conduct controlled drug buys, which were recorded by audio-video equipment placed on the C.I. During one operation, the C.I. purchased $40 worth of cocaine from Petitioner, which was captured by an audio-video device and was witnessed by a task force officer supervising the controlled purchase. (<u>See</u> Resp. Ex. B4 at 141–49, 155, 160–61; Resp. Ex. B5 at 260–62.)

The State of Florida charged Petitioner by information in the Third Judicial Circuit Court with one count of the sale or delivery of a controlled substance (Count One) and one count of the possession with intent to sell or deliver a controlled substance (Count Two). (Resp. Ex. B1 at 165.) In April 2014, Petitioner went to trial represented by a court-appointed attorney, Travis Koon, and a jury found him guilty of both counts. (Resp. Ex. B2 at 202.) The trial court sentenced Petitioner to consecutive terms of 15 years in prison. (<u>Id.</u> at 270–77.) Petitioner appealed, represented by

the Public Defender's Office for the Second Judicial Circuit. (Resp. Exs. B9, B11.) The First District Court of Appeal ("DCA") per curiam affirmed Petitioner's convictions and sentences on August 4, 2016. Queen v. State, 197 So. 3d 47 (Fla. 1st DCA 2016); (Resp. Ex. B12.)

Petitioner filed a pro se petition for writ of habeas corpus in the First DCA, raising one claim that trial counsel had a conflict of interest, one claim of ineffective assistance of appellate counsel, and one claim of trial court error. (Resp. Ex. D1.) In a per curiam opinion, the First DCA denied the ineffective-assistance-of-appellate-counsel claim "on the merits." Queen v. State, 226 So. 3d 820, 820 (Fla. 1st DCA 2017); (Resp. Ex. D2). Petitioner then moved for post-conviction relief in the trial court under Florida Rule of Criminal Procedure 3.850, initially raising four grounds for relief. (Resp. Ex. E1 at 11–29.) The trial court determined that grounds two, three, and four were insufficiently pled and dismissed the Rule 3.850 Motion with leave to amend under Rule 3.850(f)(3). (Resp. Ex. E1 at 37.) Petitioner then filed an Amended Rule 3.850 Motion, in which he repleaded grounds two through four and added a fifth ground. (Resp. Ex. E1 at 48–70.) Between the original Rule 3.850 Motion and the Amended Rule 3.850 Motion, Petitioner raised five claims for relief,

asserting the ineffective assistance of trial counsel and cumulative error.[2] The trial court denied the Amended Rule 3.850 Motion without an evidentiary hearing (id. at 73–87), and the First DCA per curiam affirmed, Queen v. State, 282 So. 3d 61 (Fla. 1st DCA 2019); (Resp. Ex. E4). These federal habeas proceedings followed.

### III.   <u>Governing Legal Principles</u>

#### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the

---

[2]     Petitioner claimed that trial counsel was ineffective because (1) he failed to provide case law to support his closing argument, (2) he failed to move to withdraw due to a conflict of interest or to request a so-called "Nelson hearing," (3) he failed to object to a copy of an audio-video recording, which was entered into evidence, being allowed into the jury deliberation room, (4) he failed to move to disqualify the trial judge for alleged bias, and (5) the cumulative effect of counsel's errors prejudiced him.

state criminal justice systems, and not as a means of error correction.'"
Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging

6

his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

> The United States Supreme Court explained:
>
> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365-366; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747-48; Sykes,[4] supra, at 84-85. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal

---

[3]    Coleman v. Thompson, 501 U.S. 722 (1991).

[4]    Wainwright v. Sykes, 433 U.S. 72 (1977).

court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at

---

[5]   <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). Courts employ a

two-part test when reviewing ineffective assistance of counsel claims. <u>See</u>

<u>Strickland</u>, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u> at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.

<u>Richter</u>, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## IV.   <u>Analysis</u>

### A. Ground One

Petitioner alleges he was denied his Sixth Amendment right to the effective assistance of counsel because his trial attorney, Travis Koon, failed to provide the trial court relevant case law to support his proposed closing argument. (Doc. 1 at 5–7.) For closing argument, Mr. Koon wanted to describe different burdens of proof to the jury, presumably to contrast them with the proof-beyond-a-reasonable-doubt standard. The trial court would not allow it unless Mr. Koon submitted case law supporting his ability to discuss other burdens of proof in closing argument, which he did not provide. (<u>See</u> <u>id.</u> at 5–6.) Instead, Mr. Koon provided case law relating to the discussion of burdens of proof during the <u>voir</u> <u>dire</u> process. (<u>Id.</u>) Petitioner claims he was prejudiced because Mr. Koon's failure to provide the case law left him without an appropriate closing argument.

Petitioner raised this claim as ground one in his Rule 3.850 Motion. (Resp. Ex. E1 at 15–17.) The trial court identified <u>Strickland</u> as the governing standard (<u>id.</u> at 74–75) and summarily denied the claim, writing:

In Ground 1, the Defendant urges that Counsel was ineffective for failing to present case law to support his argument for discussing certain legal concepts during closing argument. The Defendant asserts that Counsel's deficient performance prejudiced the defense because the Defendant was deprived of an appropriate final argument to support the defense.

During the charge conference, Counsel told the Court that he planned to discuss the different burdens of proof during his closing argument. *See attached Jury Trial Transcript at 349-350.* Counsel had tried to do this in the Defendant's previous trial but had been prohibited by the Court because the legal concepts were irrelevant and would only serve to confuse the jury. *See attached Jury Trial Transcript at 350-351.* The Defendant told the Court that he now had case law that permitted discussion of these legal concepts during closing argument. *See attached Jury Trial Transcript at 350.* Because the case law provided by Counsel dealt with *voir dire* rather than closing arguments, the Court determined that case law did not permit Counsel to discuss these irrelevant legal concepts during closing argument. *See attached Jury Trial Transcript at 352-353.* When given additional time to find case law regarding the issue of arguing to the jury about different burdens of proof in different proceedings, Counsel replied he was unable to find any case law. *See attached Jury Trial Transcript at 357.*

As far as this Court can discern, there is no Florida case law that would have permitted Counsel to discuss irrelevant legal concepts in closing argument on law not applicable to the case. It is entirely appropriate for an attorney to discuss *applicable* law during closing argument. <u>Taylor v. State</u>, 330 So. 2d 91, 93 (Fla. 1st DCA 1976) (emphasis added). However, "the purpose of closing argument is disserved when comment upon irrelevant matters is permitted." <u>Haliburton v. State</u>, 561 So. 2d 248, 250 (Fla. 1990) (citations omitted). The matters Counsel wished to discuss in closing argument were clearly unrelated to the case before the jury and could not have been applied to the facts of the case. Explanation of those legal concepts would have only served to confuse the jury.

Florida case law does not support Counsel's argument for discussing irrelevant legal concepts during closing argument. Thus, Counsel is not deficient for failing to provide this non-existent case law as support for his argument. The Defendant has failed to show that Counsel's performance was deficient. Accordingly, Ground 1 is denied.

(Resp. Ex. E1 at 75–76.)

Petitioner appealed the denial of this claim. (Resp. Ex. E2.) The First DCA affirmed the trial court's ruling without a written opinion. Queen, 282 So. 3d 61; (Resp. Ex. E4). The First DCA's decision is due deference under AEDPA, but because it did not explain its decision, this Court "looks through" to the trial court's written opinion to understand the First DCA's reasoning. Wilson, 138 S. Ct. at 1192.

The First DCA's rejection of this claim was not contrary to or based on an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), nor was it based on an unreasonable determination of the facts, § 2254(d)(2). The trial court explained that under Florida law, an attorney may not discuss legal concepts or burdens of proof inapplicable to the case at hand in closing argument, since doing so would only confuse the jury. The trial court therefore reasoned that Mr. Koon could not have been ineffective for not furnishing non-existent case law to support his proposal to discuss different burdens of proof in closing

remarks. "[A]lthough the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension, we must defer to the state's construction of its own law when the validity of the claim that … counsel failed to raise turns on state law." Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017) (quotation marks and citation omitted). Thus, this Court must defer to the trial court's finding (and by extension, the First DCA's finding) that state law precluded trial counsel from discussing inapplicable burdens of proof in closing argument, such that trial counsel did not perform deficiently. Moreover, Mr. Koon delivered a reasonable closing argument, which asserted that the C.I. was biased and unreliable because he made his living as a paid informant, that the video recording of the controlled purchase may have been incomplete, and asked the jury to carefully weigh the evidence under the proof-beyond-a-reasonable-doubt standard. (Resp. Ex. B5 at 362–69.) And, even if the First DCA's decision were not due AEDPA deference, Petitioner fails to show a reasonable probability that the outcome of trial would have been different had his attorney been able to discuss different burdens of proof in closing

argument. <u>See</u> <u>Strickland</u>, 466 U.S. at 695. Petitioner is therefore not entitled to relief on this ground.

### B. Ground Two

Petitioner alleges that Mr. Koon gave ineffective assistance because he did not move to withdraw as counsel or request that the trial court hold a so-called <u>Nelson</u>[6] hearing to advise Petitioner about a purported conflict of interest. (Doc. 1 at 7–10.) According to Petitioner, his trial attorney, Mr. Koon, was removed from the case when he worked at the state public defender's office because of a conflict of interest, and Mr. Koon gave ineffective assistance by continuing to represent Petitioner despite that fact. (<u>See</u> <u>id.</u> at 7.) Petitioner states that the Florida Bar advised the public defender's office not to disclose the nature of the conflict of interest. (<u>Id.</u> at 7 n.3.) Petitioner argues that (1) "the court erred in failing to conduct a hearing or some type of meaningful inquiry on the potential ethical conflict" and (2) trial counsel was ineffective

---

[6]     <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973).

because counsel "fail[ed] to withdraw and [did] not disclose the circumstances surrounding the conflict." (Id. at 7.)[7]

That said, Petitioner offers a timeline of events that contradicts his allegation that Mr. Koon was removed from the case because of a conflict of interest. (Id. at 8–9.) According to Petitioner, he was initially represented by Mr. Koon, then of the public defender's office, but Mr. Koon turned his cases over to another public defender—Young Kwan—because Mr. Koon was leaving for private practice (not because Mr. Koon had any conflict of interest). After Mr. Koon turned the case over to Mr. Kwan, the public defender's office withdrew, and the Florida Bar instructed the public defender's office not to disclose the nature of the conflict of interest. A few days after that, the Office of Criminal Conflict and Civil Regional Counsel also moved to withdraw from representing Petitioner due to a conflict of interest. Then, Mr. Koon, who was now in private practice, was appointed to represent Petitioner as conflict-free counsel and represented Petitioner at trial.

---

[7]     Although its relevance to his claim is unclear, Petitioner also mentions, without elaboration, that Mr. Koon had an adversarial relationship with the judge, the Hon. Leandra Johnson (see id. at 9) and that he was never told why Judge Johnson later recused herself (id. at 10).

Thus, according to Petitioner's own allegations, the public defender's office did not withdraw due to a conflict of interest until <u>after</u> Mr. Koon had turned his cases over to Mr. Kwan and left the office. Even so, Petitioner assumes that the conflict of interest affecting the public defender's office also affected Mr. Koon. Petitioner does not describe the conflict of interest, but he appears to believe that the conflict continued to exist after Mr. Koon was appointed as private "conflict-free" counsel.

Petitioner raised substantially the same claim as ground two of his Amended Rule 3.850 Motion. (Resp. Ex. E1 at 51–58.) The trial court summarily denied the claim, writing:

> In Ground 2, the Defendant argues that Counsel (Travis Koon) was ineffective for failing to file a motion to withdraw as counsel or seek a <u>Nelson</u> hearing. The Defendant alleges that Counsel had a legal and ethical duty to withdraw from the case, or, at the least, to request a <u>Nelson</u> hearing. The Defendant states that he is not fully apprised of the extent of the prejudice, but that it cannot be said with certainty that the conflict of interest did not affect the judgment and sentence.
>
> Mr. Koon originally represented the Defendant in this matter as an assistant public defender, but ceased representing the Defendant when he entered private practice. Mr. Koon was replaced by Mr. Nemecek from the Public Defender's Office, but subsequently Mr. Nemecek was replaced by Mr. Kwon, also from the Public Defender's Office. When Mr. Kwon withdrew for unknown reasons, the Office of Criminal Conflict & Civil Regional Counsel was appointed. That Office filed a motion to withdraw, citing a conflict of interest. Upon the motion being granted, Mr. Koon, then in private practice but on the Third Judicial Circuit

Attorney Registry for appointment as conflict counsel, was appointed to represent the Defendant. The Defendant claims that since Mr. Koon previously worked for the Public Defender's Office and the Office ultimately conflicted out from representing the Defendant, Mr. Koon should have also been conflicted out.

The Defendant fails to allege a material prejudice that resulted from the alleged conflict. The Florida Supreme Court has explained:

> In order to establish an ineffectiveness claim premised on an alleged conflict of interest[,] the defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 446 U.S. at 350, 100 S. Ct. 1708[8]; see also Quince v. State, 732 So. 2d 1059, 1065 (Fla. 1999).... To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. See Herring v. State, 730 So. 2d 1264, 1267 (Fla. 1998).

Hunter v. State, 817 So. 2d 786, 791–92 (Fla. 2002). The Defendant has not pled any facts demonstrating that an actual prejudice resulted from Counsel's failure to withdraw or seek a Nelson hearing. This Court has already granted the Defendant leave to amend his motion in accordance with Rule 3.850(f)(3). As the claim is still insufficient, it must be denied. Fla. R. Crim. P. 3.850(f)(3).

(Resp. Ex. E1 at 76–77.)

Petitioner appealed the denial of this claim. (Resp. Ex. E2.) The First DCA affirmed the trial court's ruling without a written opinion. Queen, 282 So. 3d 61; (Resp. Ex. E4). The First DCA's decision is due deference under AEDPA, but because it did not explain its decision, this

---

8    Cuyler v. Sullivan, 446 U.S. 335 (1980).

Court "looks through" to the trial court's written opinion to understand the First DCA's reasoning. Wilson, 138 S. Ct. at 1192.

"To establish a violation of the defendant's Sixth Amendment right to counsel based on a conflict of interest, a defendant must demonstrate: (a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected his attorney's performance." Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 796 (11th Cir. 2020) (quotation marks and citation omitted), cert. denied sub nom. Tuomi v. Inch, 141 S. Ct. 1721 (2021). "The 'mere possibility of [a] conflict of interest does not rise to the level of a Sixth Amendment violation.'" Id. (quoting Buenoano v. Singletary, 74 F.3d 1078, 1086 (11th Cir. 1996)).

> To show an actual conflict of interest, a habeas petitioner must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action that favors an interest in competition with that of the defendant. If counsel did not make such a choice, the conflict remained hypothetical.

Id. (cleaned up; internal quotation marks and citation omitted). "To prove adverse effect, a habeas corpus petitioner must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and

the decision to forgo the alternative strategy of defense." Id. (quoting Pegg v. United States, 253 F.3d 1274, 1278 (11th Cir. 2001)).

The First DCA's rejection of Petitioner's claim was not contrary to or based on an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), nor was it based on an unreasonable determination of the facts, § 2254(d)(2). The Court assumes there was a conflict of interest between Petitioner and the public defender's office and the Office of Criminal Conflict and Civil Regional Counsel. But there is no evidence that these conflicts arose while Mr. Koon was with the public defender's office, or that they had anything to do with Mr. Koon at all. Petitioner fails to identify an actual, rather than hypothetical, conflict of interest between himself and Mr. Koon. Nor does Petitioner identify how any conflict "adversely affected [Mr. Koon's] performance." Tuomi, 980 F.3d at 796. Thus, Petitioner fails to show that Mr. Koon had an actual conflict of interest, that he was ineffective for not requesting a Nelson hearing to resolve a hypothetical conflict of interest, or that the trial court erred by not holding a Nelson hearing. Relief on this claim will be denied.

## C. Ground Three

At Petitioner's trial, the State introduced an audio-video recording of the controlled drug buy between Petitioner and the C.I. (Resp. Ex. B4 at 155), which was played for the jury (id. at 215–17). The video, State's Exhibit 1, was redacted to exclude another drug buy conducted later in the day by the same C.I., where the C.I. returned to the same location and purchased drugs from a different individual. (See id. at 218–28, 232–33.) Petitioner's counsel, Mr. Koon, asserted that the video was incomplete because it did not show the police searching the C.I. following the alleged transaction with Petitioner and did not show the C.I. returning to the location later on to buy drugs from another individual. (Resp. Ex. B4 at 218; Resp. Ex. B5 at 362–69 (closing argument).) Mr. Koon suggested that the other individual in the audio-video recording was the actual source of the cocaine in Petitioner's case.

Petitioner alleges that trial counsel, Mr. Koon, gave ineffective assistance by failing to object to the trial court's admission of the redacted video tape and allowing its submission the to the jury. (Doc. 1 at 11–12.) As Petitioner puts it, the video contained "other arguabl[y] relevant transactions with the Petitioner." (Id. at 11.) "This additional transaction

was redacted [so that] only the incriminating portion of the video was allowed to be viewed by the jury." (Id.). Petitioner says that counsel could have, but failed to, object to the video being brought into the jury deliberation room. (Id.) Petitioner alleges that counsel's failure to object to the videotape being taken into the jury deliberation room (1) failed to preserve an objection to the videotape's admissibility and (2) created a "real danger" that "statements [in the videotape] will be unfairly given more emphasis than other testimony." (Id.)

Petitioner raised substantially the same claim as ground three in his Amended Rule 3.850 Motion. (Resp. Ex. E1 at 58–61.) The trial court identified Strickland as the governing standard (id. at 74–75) and summarily denied the claim, writing:

> In Ground 3, the Defendant alleges that Counsel is ineffective for failing to object to the jury's access to a redacted video tape. The Defendant contends that "[i]t is not certain that a conviction could not [sic] have been obtained without this violation of due process." *Motion at 13*.
>
> Like in Ground 2, the Defendant has failed to allege a material prejudice that resulted from Counsel's alleged error. The Defendant simply alleges that it is "not certain" the jury would still convict the Defendant if they had not had access to the video tape. Mere speculation that counsel's error affected the outcome of the proceeding is insufficient. State v. Dickson, 89 So. 3d 277, 279 (Fla. 1st DCA 2012) (citing Strickland v. Washington, 466 U.S. 668, 693 (1984)). This Court has already granted the Defendant leave to

> amend his motion in accordance with rule 3.850(f)(3). As the claim
> is still insufficient, it must be denied. Fla. R. Crim. P. 3.850(f)(3).

(Id. at 77.)

Petitioner appealed the denial of this claim. (Resp. Ex. E2.) The
First DCA affirmed the trial court's ruling without a written opinion.
Queen, 282 So. 3d 61; (Resp. Ex. E4). The First DCA's decision is due
deference under AEDPA, but because it did not explain its decision, this
Court "looks through" to the trial court's written opinion to understand
the First DCA's reasoning. Wilson, 138 S. Ct. at 1192.

The First DCA's rejection of this claim was not contrary to or based
on an unreasonable application of clearly established federal law, 28
U.S.C. § 2254(d)(1), nor was it based on an unreasonable determination
of the facts, § 2254(d)(2). Even assuming Mr. Koon erred by allowing the
redacted video of the controlled drug buy to be taken into the jury
deliberation room, Petitioner points to no evidence that the jury actually
rewatched the video during its deliberations or gave the video any more
weight than the witnesses' testimony. At trial, the jury not only saw the
audio-video recording of the controlled drug buy (as well as still
photographs taken from the recording), it heard testimony from
witnesses to the transaction, including the C.I., Willie Knight, and the

lead investigator, Officer Mitchell Cline. Knight testified to purchasing $40 worth of cocaine in a controlled purchase and identified Petitioner in court as the person who sold it to him. (Resp. Ex. B5 at 261–62.) Likewise, Officer Cline testified to witnessing a hand-to-hand transaction between the C.I. and a person he identified in court as Petitioner, and he testified that the C.I.'s live audio feed reflected that the transaction was for drugs. (Resp. Ex. B4 at 145–49.) Officer Cline, Officer Rick Glover, and Officer Jason Byrd testified that they searched the C.I. and his vehicle before and after the controlled buy to make sure the C.I. had no contraband. (Resp. Ex. B4 at 141, 154–55, 239–40; Resp. Ex. B5 at 254–55.)

Petitioner can only speculate that he suffered prejudice from the video recording being taken back to the jury deliberation room. But speculation about the prejudicial effect of an error "is 'insufficient to carry the burden of a habeas corpus petitioner.'" Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)). "It is not enough for the defendant to show that the error[ ] had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Because Petitioner fails to show that the

state court unreasonably rejected his claim based on <u>Strickland</u>'s prejudice prong, he is not entitled to relief on this claim.

### D. Ground Four

Next, Petitioner alleges that trial counsel was ineffective for not having the trial judge, the Honorable Leandra Johnson, disqualified. (Doc. 1 at 13–15.)[9] He alleges that, before joining the bench, Judge Johnson had prosecuted Petitioner in a previous case and that, in another case after becoming a judge, she sentenced Petitioner to more than the statutory maximum. (Doc. 1 at 13.) According to Petitioner, he "made an unrebutted statement at his sentencing that this previous sentence by [Judge Johnson] exceeded the statutory maximum for the charged offense." (<u>Id.</u>) He argues that "[t]rial counsel failed to object to his Judge presiding on this case and the Judge's prejudice against the [Petitioner] rose to the level of bias that defense counsel should have filed a motion to disqualify." (<u>Id.</u>) Petitioner argues that he had "a reasonable, well-grounded fear that he would not receive a fair and impartial trial" before Judge Johnson because she had once imposed an unlawful sentence on

---

[9]     Petitioner also filed a pro se motion in the Rule 3.850 proceedings to disqualify Judge Johnson. (Resp. Ex. E1 at 43–47.) The trial court denied the motion. (<u>Id.</u> at 71–72.)

him, and because he and the judge had an adversarial relationship. (Id. at 14.) Petitioner alleges that the fact that Judge Johnson imposed the statutory maximum sentence in this case, despite Petitioner's "penury gain of $10," proves her bias and proves prejudice resulting from counsel's failure to disqualify the judge. (Id.)[10] He also states that Judge Johnson "has since recused herself from Petitioner's case, without any reason given." (Id.)

Petitioner raised substantially the same claim as ground four in his Amended Rule 3.850 Motion. (Resp. Ex. E1 at 61–66.) The trial court identified Strickland as the governing standard (id. at 74–75) and summarily denied the claim, writing:

> In Ground 4, the Defendant argues that Counsel was ineffective for failing to seek the trial judge's disqualification. The Defendant claims that the trial judge was prejudiced because she had previously prosecuted the Defendant. The Defendant alleges that he "made an unrebutted statement at his sentencing that [a] previous sentence by [her] exceeded the statutory maximum for the charged offense."
>
> It is likely considered deficient performance for counsel to fail to file a motion for disqualification *when it is appropriate to do so*. Thompson v. State, 990 So. 2d 482, 489–90 (Fla. 2008) (emphasis added). However, the Defendant has not shown that a

---

[10]   Petitioner had a lengthy criminal history stretching back to 1985, which included 19 prior convictions related to the sale or possession of cocaine, a conviction related to dangerous drugs, and a conviction for attempted lewd and lascivious assault on a child under the age of 16. (Resp. Ex. B2 at 281.) That criminal history might have explained the trial court's sentencing decision.

motion for disqualification was appropriate at the time of sentencing. Although he correctly cites the law for the ground of disqualification to be that "the party fears that he will not receive a fair trial because of specifically described prejudice and bias of the judge," he has not specifically described the prejudice and bias. *Amended Motion at 15*. While he alleges that the trial judge prosecuted him in a previous case, the fact that the presiding judge prosecuted a defendant in a previous case does not necessarily present a direct conflict. <u>W.I. v. State</u>, 696 So. 2d 457, 458 (Fla. 4th DCA 1997). The Defendant has provided no specific facts supporting his contention of prejudice and bias on the part of the trial judge. Additionally, he does not allege in his motion when he advised counsel of the prior prosecution. Rule 2.330(e), Florida Rules of Judicial Administration, provides that "a motion to disqualify shall be filed within a reasonable time not to exceed 10 days after discovery of the facts constitution grounds for the motion…" The court file reflects that the undersigned judge presided over the case for over a year prior to the trial and sentencing. Because the Defendant has failed to show that a motion for disqualification was appropriate or was timely requested, he has not shown that Counsel erred by failing to file such a motion. Accordingly, Ground 4 must be denied.

(<u>Id.</u> at 77–78.)

Petitioner appealed the denial of this claim. (Resp. Ex. E2.) The First DCA affirmed the trial court's ruling without a written opinion. <u>Queen</u>, 282 So. 3d 61; (Resp. Ex. E4). The First DCA's decision is due deference under AEDPA, but because it did not explain its decision, this Court "looks through" to the trial court's written opinion to understand the First DCA's reasoning. <u>Wilson</u>, 138 S. Ct. at 1192.

The First DCA's rejection of this claim was not contrary to or based on an unreasonable application of clearly established federal law, 28

U.S.C. § 2254(d)(1), nor was it based on an unreasonable determination of the facts, § 2254(d)(2). Under the Florida Rules of Judicial Administration in effect at the time, a party moving to disqualify a judge must show "that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge." Fla. R. Jud. Admin. 2.330(d)(1) (eff. to Feb. 28, 2021). "The validity of the claim that [Petitioner's] counsel failed to assert—that the state trial court judge was subject to disqualification—is clearly a question of state law." Knight v. Sec'y, Fla. Dep't of Corr., No. 17-12284-F, 2017 WL 5593485, at *3 (11th Cir. Aug. 22, 2017). "A determination of whether certain allegations satisfy Florida's legal standard for disqualification of a judge is within the province of the Florida courts." Id. (citing Hendrix v. Sec'y, Fla. Dep't of Corr., 527 F.3d 1149, 1153 (11th Cir. 2008)). As a result, although this ineffective assistance claim "is a federal constitutional claim that the court considers in light of the clearly established law of Strickland," this Court is "bound by the [state court's] interpretation of its own law" because "the validity of the claim that counsel failed to assert is clearly an issue of state law." Id. (citing Wainwright v. Goode, 464 U.S. 78, 84 (1983)); see also Pinkney, 876 F.3d at 1295 ("[A]lthough the issue

of ineffective assistance … is one of constitutional dimension, we must defer to the state's construction of its own law when the validity of the claim that … counsel failed to raise turns on state law.").

The state post-conviction court addressed whether Petitioner's alleged facts provided an adequate basis for seeking recusal of Judge Johnson under Florida law, and it determined they did not. As the court explained,

> Although [Petitioner] correctly cites the law for the ground of disqualification to be that "the party fears that he will not receive a fair trial because of specifically described prejudice and bias of the judge," he has not specifically described the prejudice and bias. *Amended Motion at 15*. While he alleges that the trial judge prosecuted him in a previous case, the fact that the presiding judge prosecuted a defendant in a previous case does not necessarily present a direct conflict. W.I. v. State, 696 So. 2d 457, 458 (Fla. 4th DCA 1997). The Defendant has provided no specific facts supporting his contention of prejudice and bias on the part of the trial judge.

(Resp. Ex. E1 at 77–78.) As a federal habeas court, this Court must defer to the state post-conviction court's conclusion that, under state law, Petitioner's allegations were insufficient to show that Judge Johnson was biased, such that trial counsel had any Sixth Amendment obligation to move for her disqualification. Knight, 2017 WL 5593485, at * 4 (citing Wainwright, 464 U.S. at 84). Likewise, that Petitioner accused Judge Johnson of imposing a sentence in a previous case that he considered

excessive also does not establish judicial bias. <u>Schultz v. Wainwright</u>, 701 F.2d 900, 901 (11th Cir. 1983).

Moreover, Florida law imposes a time limit on moving to disqualify a judge:

> A motion to disqualify shall be filed within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling. Any motion for disqualification made during a hearing or trial must be based on facts discovered during the hearing or trial and may be stated on the record, provided that it is also promptly reduced to writing in compliance with subdivision (c) and promptly filed.

Fla. R. Jud. Adm. 2.330(e) (eff. to Feb. 28, 2021). The state court docket sheet reflects that Judge Johnson was first assigned to the case on December 15, 2012 (over a year before trial) (Resp. Ex. A, Docket Sheet, Docket Entry 87), and she presided over several pretrial conferences between then and 2014 (<u>see</u> <u>id.</u>, Docket Entries 96, 102, 108, 109, 119, 135, 142, 146). Judge Johnson also presided over some pretrial motions and jury selection before she presided over the trial and sentencing. (<u>Id.</u>, Docket Entries 116, 153, 154.) Thus, Petitioner would have learned well in advance that Judge Johnson was presiding. And because her alleged bias arose from prior cases involving Petitioner and Judge Johnson (one when Judge Johnson was a prosecutor and one when she was a judge),

Petitioner also would have recognized the basis for her disqualification as soon as he realized she was the presiding judge. Yet Petitioner fails to state, either in his Amended Rule 3.850 Motion or in his federal habeas petition, <u>when</u> (if ever) he informed Mr. Koon that because of these facts, he feared that Judge Johnson would not be impartial. (<u>See</u> Doc. 1 at 13–14; Resp. Ex. E1 at 61–66.) Thus, as the state post-conviction court explained, Petitioner also fails to show that Mr. Koon could have <u>timely</u> moved to disqualify Judge Johnson. (Resp. Ex. E1 at 78.) As a result, the court concluded that Petitioner had failed to show that Mr. Koon's performance was deficient. (<u>Id.</u>)

Because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, … when the two apply in tandem, review is doubly so." <u>Hittson</u>, 759 F.3d at 1248. Petitioner's allegations do not overcome this doubly deferential standard of review. Relief on this claim will therefore be denied.

## E. Grounds Five and Six are Procedurally Defaulted

Finally, Petitioner raises two more claims of ineffective assistance of counsel in Grounds Five and Six. In Ground Five, Petitioner contends that Mr. Koon was ineffective for not moving to dismiss the information

because the information was not supported by an affidavit sworn to by a material witness. (Doc. 1 at 15–19.) Under Florida Rule of Criminal Procedure 3.140, before a prosecutor can charge a person by information, the prosecutor must state under oath "his or her good faith in instituting the prosecution and certifying that he or she has received testimony from the material witness or witnesses for the offense." Fla. R. Crim. P. 3.140(g). Petitioner acknowledges that the lead investigator, Officer Cline (who testified at trial that he witnessed the controlled drug buy), provided an affidavit supporting the information. (Doc. 1 at 17; see also Resp. Ex. A at 5.) But Petitioner states that under State v. Weinberg, 780 So. 2d 214 (Fla. 5th DCA 2001), a law enforcement officer is not a "material witness."[11] Instead, Petitioner claims, the C.I. was the "material witness" whose affidavit should have been required, but the

---

[11]    In Weinberg, the Fifth DCA held that, based on the facts of that case, a detective investigating prescription drug fraud was not a "material witness" because the detective only "collected evidence [from a doctor's office] in the form of an altered prescription which the doctor's office verbally verified had been altered." 780 So. 2d at 215. The court explained that "while an investigating officer may be a material witness in some situations, this would not be the case here since the pharmacist and doctor would be the material witnesses and there was no sworn affidavit from either. The altered prescription is not something that can be interpreted by Detective Clifton and, as such, she has no importance except for possibly establishing a chain of evidence." Id. at 215–16 (emphasis added). The Weinberg decision leaves open the possibility that a law enforcement officer can be a "material witness" if he or she witnessed the crime itself, as Officer Cline testified that he did.

information was not supported by an affidavit from the C.I. (See id. at 16.) Petitioner alleges that, but for counsel's error, there is a reasonable probability the outcome would have been different.

In Ground Six, Petitioner alleges that trial counsel was ineffective because did not file a "motion to dismiss" the arrest warrant based on the judge's failure to find probable cause and the judge's failure to sign the arrest warrant under Florida Rule of Criminal Procedure 3.121(6) and Florida Statutes Sections 901.02(3) and (4). (Doc. 1 at 19–20.) Petitioner alleges that, but for counsel's error, there is a reasonable probability the result would have been different.

Petitioner presented neither ground in his Rule 3.850 Motion or Amended Rule 3.850 Motion. (Resp. Ex. E1 at 11–29, 48–70.) Nor does it appear that Petitioner raised these claims in any other appropriate state proceeding. Thus, Respondents argue that Grounds Five and Six are unexhausted. (Doc. 7 at 10–12.) And because time has now expired for Petitioner to raise these claims in a state post-conviction motion, due to the expiration of Rule 3.850(b)'s two-year limitations period, Respondents argue that the claims are procedurally defaulted because it would be futile for Petitioner to attempt to exhaust them in state court.

(Id.) Respondents also argue that Petitioner fails to allege, let alone establish, cause and prejudice for his failure to raise these claims in state court. (Id. at 11, 12.) Indeed, Petitioner did not even acknowledge the procedural default or lack of exhaustion in his federal habeas petition, even though the habeas form prompted him to do so. In the federal habeas petition, Petitioner incorrectly asserts that he raised Grounds Five and Six in state post-conviction proceedings (Doc. 1 at 19, 20), which contradicts his own recounting of the claims he raised under Rule 3.850 (id. at 2–3). And although the federal habeas form asked Petitioner to explain why he did not exhaust Grounds Five or Six, Petitioner simply stated "N/A." (Id. at 18, 20.)

In his Reply, Petitioner asserts, without support, that he did properly exhaust Grounds Five and Six. (Doc. 12 at 1.) But on the next page, he acknowledges that "Ground Five and Ground Six was [sic] not raised in Petitioner's rule 3.850 motion as a 6th amendment violation under Strickland v. Washington, 466 U.S. 668 (1984)." (Id. at 2.) Petitioner does not allege that he can overcome the procedural default under the cause-and-prejudice exception. However, he argues that he can avoid the procedural default under the miscarriage-of-justice exception

discussed in <u>Murray v. Carrier</u>, 477 U.S. 478 (1986), <u>Schlup v. Delo</u>, 513 U.S. 298 (1995), and <u>House v. Bell</u>, 547 U.S. 518 (2006), because he is actually innocent. (<u>Id.</u> at 2–3.)

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496. To invoke the actual innocence exception, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him" in the light of newly discovered evidence. <u>Schlup</u>, 513 U.S. at 327. The new evidence must be "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." <u>Id.</u> at 324. "This exception is exceedingly narrow in scope, however, and requires proof of actual innocence, not just legal innocence." <u>Ward</u>, 592 F.3d at 1157 (quotation marks and citation omitted).

Petitioner's effort to invoke the actual innocence exception fails for three reasons. First, Petitioner does not point to any "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence" that was not presented at trial, which is the type of "new reliable evidence" required to trigger that exception. <u>Schlup</u>, 513 U.S. at 327. Second, Grounds Five and Six, which allege trial counsel's failure to seek dismissal of the information because it was not supported by a legally sufficient affidavit and counsel's failure to move to "dismiss" the arrest warrant, concern Petitioner's legal innocence, not his factual innocence, so neither ground is appropriate for the miscarriage of justice exception. <u>Ward</u>, 592 F.3d at 1157. And third, Petitioner fails to show why "it is more likely than not that no reasonable juror would have convicted him" in the light of any newly discovered evidence. <u>Schlup</u>, 513 U.S. at 327. Indeed, the C.I. (Willie Knight) testified that Petitioner sold him $40 worth of cocaine (Resp. Ex. B5 at 261–62), and field testing and lab testing confirmed that the substance was cocaine (Resp. Ex. B4 at 157; Resp. Ex. B5 at 305–06.) Officer Cline testified that he witnessed a hand-to-hand transaction between Petitioner and the C.I., and he identified Petitioner in open court as the person who sold cocaine to the C.I. (Resp. Ex. B4 at 145–49.) And the transaction was captured by an audio-video recording. The recording was introduced into evidence as State's Exhibit 1 and played for the jury (<u>id.</u> at 155, 215–17), and still

photograph excerpts were published as well as State's Exhibits 3(a) and 3(b) (id. at 160–61). (See also Resp. Ex. B2 at 256–57.) Thus, the evidence against Petitioner was considerable.

In short, Grounds Five and Six do not merit habeas relief because they are unexhausted and procedurally defaulted. 28 U.S.C. § 2254(b)(1); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999) ("[I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal." (citation omitted)). Petitioner does not assert that he can overcome the procedural default of Grounds Five and Six under the cause-and-prejudice standard, and he fails to show he can satisfy the actual innocence exception. Thus, relief on these grounds will be denied.

## V.   **Evidentiary Hearing**

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citation omitted). "In

deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> Moreover, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings," a district court is prohibited from holding an evidentiary hearing except under the narrow circumstances described in § 2254(e)(2), the limits of which the Supreme Court reinforced in <u>Shinn v. Ramirez</u>, 142 S. Ct. 1718 (2022). The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

## VI.   <u>Conclusion</u>

The Court has reviewed each of Petitioner's claims and finds that none warrants habeas relief under 28 U.S.C. § 2254. Accordingly, it is **ORDERED:**

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk** will enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals the denial of this Petition, the Court denies a certificate of appealability (COA). Because the Court has determined that a COA is not warranted, the **Clerk** will terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed. Such termination will serve as a denial of the motion.[12]

**DONE AND ORDERED** at Jacksonville, Florida this 11th day of January, 2023.

HENRY LEE ADAMS, JR.
United States District Judge

---

[12] The Court should issue a COA only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). After consideration of the record as a whole, the Court will deny a COA.

<u>Copies to:</u>
Counsel of record
Pro se petitioner